IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| COLORADO BUILDING CORPORATION | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:23-cv-00294-DII |
| | § | |
| SCOTTSDALE INSURANCE COMPANY | § | |
| *Defendant.* | § | |

**DEFENDANT SCOTTSDALE INSURANCE COMPANY'S FIRST AMENDED
ANSWER AND DEFENSES TO PLAINTIFF'S ORIGINAL PETITION**

Defendant Scottsdale Insurance Company ("Scottsdale") files this First Amended Answer and Defenses to Plaintiff Colorado Building Corporation's Original Petition, and would respectfully show as follows:

**I. ANSWER**

Scottsdale makes the following admissions and denials to Plaintiff's claims as authorized by Federal Rule of Civil Procedure 8(b):

**DISCOVERY LEVEL**

1.      Paragraph 1 addresses the discovery control level in Texas state court and does not require a response from Scottsdale. To the extent a response is required, Scottsdale submits that discovery in this matter should be governed by the Federal Rules of Civil Procedure and this Court's Scheduling Order.

**RULE 47 STATEMENT**

2.      Paragraph 2 concerns allegations specific to the Texas Rules of Civil Procedure. Scottsdale submits that the Federal Rules of Civil Procedure govern this dispute and, therefore, no response is required. To the extent a response is required, Scottsdale denies that Plaintiff is entitled to the relief requested in Paragraph 2.



**DEFENDANT'S
EXHIBIT A**

## PARTIES

3.      Upon information and belief, Scottsdale admits the allegations in Paragraph 3.

4.      Scottsdale admits the allegations in Paragraph 4. Scottsdale further admits that it has been served and has appeared and answered this lawsuit.

## JURISDICTION AND VENUE

5.      Paragraph 5 addresses subject matter jurisdiction in Texas state court and does not require a response from Scottsdale. To the extent a response is required, Scottsdale submits that the United States District Court for the Western District of Texas, Austin Division, has diversity jurisdiction in this case. Scottsdale otherwise denies the remaining allegations in Paragraph 5.

6.      Paragraph 6 addresses venue in Texas state court and does not require a response from Scottsdale. To the extent a response is required, Scottsdale submits that venue is proper in the United States District Court for the Western District of Texas, Austin Division. Scottsdale otherwise denies the remaining allegations contained in Paragraph 6.

## FACTS

7.      Upon information and belief, Scottsdale admits the allegations in Paragraph 7.

8.      Scottsdale admits Plaintiff obtained an insurance policy covering the Property. Scottsdale is without sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 8 and, therefore, denies the same.

9.      Scottsdale admits that it issued policy no. CPS7104163 (the "Policy") to Plaintiff, which insured the property located at 3435 Greystone Dr., Austin, Texas 78731 (the "Property") for the policy period from May 2, 2020 to May 2, 2021 (the "Policy Period"), subject to the Policy's terms, conditions, limitations, and exclusions.

10.     Scottsdale admits the Policy was in effect during the Policy Period, subject to the Policy's terms, conditions, limitations, and exclusions. Answering further, Scottsdale does not contend Plaintiff failed to pay the required insurance premiums. Scottsdale denies the remaining allegations in Paragraph 10.

11.     Scottsdale admits that a winter weather event referred to as "Winter Storm Uri" occurred in the state of Texas during February 2021. Scottsdale otherwise denies the remaining allegations in Paragraph 11.

12.     Scottsdale is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 12 and, therefore, denies the same.

13.     Scottsdale admits it issued payment for covered damages arising out of the subject claim, including interior water damage repairs, in the amount of $227,480.85. Scottsdale otherwise denies the allegations in Paragraph 13.

14.     Scottsdale is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 14 and, therefore, denies the same.

15.     Scottsdale admits Plaintiff notified Scottsdale of the loss. Scottsdale further admits Plaintiff hired a mitigation company to assess and repair damage to the Property following the loss. Scottsdale denies the remaining allegations in Paragraph 15.

16.     Scottsdale admits Plaintiff hired a mitigation company to assess and repair damage to the Property. Scottsdale denies the remaining allegations in Paragraph 16.

17.     Scottsdale admits the mitigation company hired by Plaintiff remediated and repaired damage to the Property. Scottsdale denies the remaining allegations in Paragraph 17.

18.     Scottsdale denies the allegations set forth in paragraph 18 of Plaintiff's Original Petition.

19.     Scottsdale denies the allegations in Paragraph 19.

20.     Scottsdale denies the allegations set forth in Paragraph 20.

21.     Scottsdale admits it issued payments to Plaintiff on the claim totaling $227,480.85.
Scottsdale denies the remaining allegations in Paragraph 21.

22.     Scottsdale denies the allegations in Paragraph 22.

## CAUSES OF ACTION

### *Breach of Contract*

23.     Scottsdale admits the Policy is a contract. Scottsdale denies the remaining
allegations in Paragraph 23.

24.     Scottsdale denies the allegations in Paragraph 24.

25.     Scottsdale denies the allegations in Paragraph 25.

### *Violations of Prompt Pay Obligations*

26.     Paragraph 26 states legal conclusions which do not require responses from
Scottsdale. To the extent responses are required, Scottsdale denies the same.

27.     Scottsdale denies the allegations in Paragraph 27.

28.     Paragraph 27 states a legal conclusion which does not require a response from
Scottsdale. To the extent a response is required, Scottsdale denies the same.

### *Violations of Texas Insurance Code and Texas Business & Commerce Code*

29.     Paragraph 29 states a legal conclusion which does not require a response from
Scottsdale. To the extent a response is required, Scottsdale admits that the Texas Insurance Code
and Texas Business and Commerce code speak for themselves.

30.     Scottsdale denies the allegations in Paragraph 30.

31.    Paragraph 31 states several legal conclusions which do not require responses from Scottsdale. To the extent responses are required, Scottsdale denies the same. Answering further, Scottsdale denies Plaintiff is entitled to the damages alleged.

*Good Faith and Fair Dealing*

32.    Scottsdale admits the allegations in Paragraph 32. Scottsdale denies that it breached the duty of good faith and fair dealing owed to Plaintiff in the claim made the basis of this lawsuit.

33.    Scottsdale denies the allegations in Paragraph 33.

34.    Scottsdale denies the allegations in Paragraph 34 and further denies Plaintiff is entitled to the alleged damages.

**ATTORNEYS FEES**

35.    Scottsdale denies the allegations in Paragraph 35.

**CONDITIONS PRECEDENT**

36.    Scottsdale denies the allegations in Paragraph 36.

**JURY DEMAND**

37.    Paragraph 37 is Plaintiff's demand for a jury trial and does not require a response from Scottsdale. To the extent a response is required, Scottsdale joins in Plaintiff's demand for a trial before a jury.

**PRAYER**

Scottsdale denies that Plaintiff is entitled to the relief requested in this "Prayer" section.

## II.  SCOTTSDALE'S DEFENSES

38.    In addition to the foregoing specific denials, Scottsdale asserts, without limitation, the following defenses:

### First Defense
### Policy Conditions, Limitations, and Exclusions

39.    Plaintiff cannot recover, in whole or in part, on its breach of contract claim, and consequently on any of the other causes of action alleged in its Original Petition, because the Policy contains conditions, limitations, and exclusions negating coverage, in whole or in part, for the damages alleged by Plaintiff. Scottsdale's contractual obligations are determined by the terms, conditions, limitations, and exclusions contained in the Policy and Scottsdale relies on such terms, conditions, limitations, and exclusions in defense of the claims asserted against it. Potentially applicable Policy provisions include those listed below.

### COMMON POLICY DECLARATIONS
***

**Item 1.** NAMED INSURED AND MAILING ADDRESS

Colorado Building Corporation
3425 Greystone Dr. Ste. 106
Austin, TX 78731
***

**Item 2.** POLICY PERIOD          From: 05/02/2020     To: 05/02/2021

***                    12:01 A.M., Standard Time at the mailing address shown in Item 1.

### SCHEDULE OF LOCATIONS
***

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 1 | 1 | 3435 Greystone Dr. Austin, TX 78731 | Lessor's Risk |

***

### COMMERCIAL PROPERTY COVERAGE PART
### SUPPLEMENTAL DECLARATIONS
***

**Item 2.**      Premises Described: *See Schedule of Locations*
**Item 3.**      $500 Deductible unless otherwise indicated.
**Item 4.**      Coverages Provided:

| Prem. | Bldg. | | Limit of | Covered | Coinsurance |
|---|---|---|---|---|---|

| No. | No. | Coverage | Insurance | Causes of Loss | |
|-----|-----|----------|-----------|----------------|---|
| 1 | 1 | Building | $1,651,100 | Special | 80% |

Construction:  Non-Combustible        Year Built: 1987        No. of Stories: 1

X. Replacement Cost

\*\*\*

Policy Deductible: $2,500

\*\*\*

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coinsurance |
|-----------|-----------|----------|--------------------|------------------------|-------------|
| 1 | 1 | Business Income with Extra Expense | $265,156 | | |

\*\*\*

Business Income: Monthly Limit: ¼

\*\*\*

## BUILDING AND PERSONAL PROPERTY
## COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section H. Definitions.

### A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

#### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, A.1., and limited in A.2. Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

##### a. Building, meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

\*\*\*

#### 3. Covered Causes of Loss

See applicable Causes of Loss form as shown in the Declarations.

#### 4. Additional Coverages

\*\*\*

##### e. Increased Cost of Construction

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations in e.(3) through e.(9) of this Additional Coverage.

(3) The ordinance or law referred to in e.(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged;

(b) You failed to comply with.

\*\*\*

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less.

\*\*\*

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years.

\*\*\*

## B. Exclusions and Limitations

See applicable Causes of Loss Form as shown in the Declarations.

## C. Limits of Insurance

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

\*\*\*

## D. Deductible

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

\*\*\*

## E. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

\*\*\*

### 2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent

8

and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request the selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

      a. Pay its chosen appraiser; and

      b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties in the Event of Loss or Damage**

      a. You must see that the following are done in the event of loss or damage to Covered Property:

      ***

          (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

          (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

          (4) Take all reasonable steps to protect the Covered Property from future damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

          (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

          ***

          (8) Cooperate with us in the investigation or settlement of the claim.

      ***

**4. Loss Payment**

      a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

          (1) Pay the value of lost or damaged property;

          (2) Pay the cost of repairing or replacing the lost or damaged property, subject to b., below;

          (3) Take all or any part of the property at an agreed or appraise value; or

          (4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.

          We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

      b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

      ***

9

    d. We will not pay you more than your financial interest in the Covered Property.
    \*\*\*

## F. Additional Conditions
\*\*\*

### 2. Mortgageholders
    a. The term mortgageholder includes trustee.
    b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.
    \*\*\*

## G. Optional Coverages
If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:
\*\*\*

### 3. Replacement Cost
    a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.
    \*\*\*
    d. We will not pay on a replacement cost basis for any loss or damage:
        (1) Until the lost or damaged property is actually repaired or replaced; and
        (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.
    \*\*\*
    e. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to f. below.
        (1) The Limit of Insurance applicable to the lost or damaged property;
        (2) The cost to replace the lost or damaged property with other property:
            (a) Of comparable material and quality; and
            (b) Used for the same purpose; or
        (3) The amount equally spent that is necessary to repair or replace the lost or damaged property.
    \*\*\*
    f. The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.
    \*\*\*

**BUSINESS INCOME (AND EXTRA EXPENSE)**
**COVERAGE FORM**
\*\*\*

## A. Coverage

### 1. Business Income
Business Income means the:
    a. Net income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
    b. Continuing normal operating expenses incurred, including payroll.
    \*\*\*

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

(1) Business Income Including "Rental Value".

(2) Business Income Other Than "Rental Value".

(3) "Rental Value".

If option (1) above is selected, the term Business Income will include "Rental Value". If option (3) above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

\*\*\*

**2. Extra Expense**

a. Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replacement property) to:

(1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

(2) Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

\*\*\*

**5. Additional Coverages**

\*\*\*

**c. Extended Business Income**

\*\*\*

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

(a) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

(b) Ends on the earlier of:

(i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

(ii) 60 consecutive days after the date determined in (2)(a) above.

***

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

***

## B. Limits of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

***

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

### 1. Appraisal

If we can you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

***

### 3. Loss Determination

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

***

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

b. The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred.

\*\*\*

(2) Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

\*\*\*

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

\*\*\*

**F. Definitions**

\*\*\*

2. "Operations" means:

a. Your business activities occurring at the described premises; and

b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of Restoration" means the period of time that:

a. Begins:

(1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

(2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

\*\*\*

5. "Rental Value" means Business Income that consists of:

a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

b. Continuing normal operating expenses incurred in connection with that premises, including:

(1) Payroll; and

(2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

a. The slowdown or cessation of your business activities; or

b. That a part or all of the described premises is rendered untenable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

**COMMERCIAL PROPERTY CONDITIONS**

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms. ***

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

    1. There has been full compliance with all of the terms of this Coverage Part; and

    2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

***

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

    1. We cover loss or damage commencing:

        a. During the policy period shown in the Declarations;

        ***

**CAUSES OF LOSS – SPECIAL FORM**

Words and phrases that appear in quotation marks have special meaning. Refer to Section G. Definitions.

**A. Covered Causes of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B. Exclusions**

    1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. ***

    2. We will not pay for loss or damage caused by or resulting from any of the following: ***

        b. Delay, loss of use or loss of market. ***

        d.    (1) Wear and tear;

                (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

                (3) Smog;

                (4) Settling, cracking, shrinking or expansion; ***

        f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more. ***

    3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

        a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

14

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

\*\*\*

## LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDERS' RISK COVERAGE FORM

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

\*\*\*

## SCHEDULE

\*\*\*

**Loss Payee Name:**

R Bank, a Texas State Bank

**Loss Payee Address:**

3600 E Palm Valley Blvd Round Rock, TX 78665 United States

\*\*\*

C. The following is added to the **Loss Payment** Loss Condition, as indicated in the Declarations or in the Schedule:

**1. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

a. Adjust losses with you; and

b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**2. Lender's Loss Payable Clause**

a. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

\*\*\*

(4) Financing statements; or

(5) Mortgages, deeds of trust, or security agreements.

b. For Covered Property in which both you and a Loss Payee have an insurable interest:

(1) We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

\*\*\*

15

40.     The assertion of any specific provision of the Policy in this Answer is not intended to serve as a waiver or abandonment of any other applicable provisions of the Policy, which is asserted and incorporated herein in full by reference.

**Second Defense**
**Failure of Conditions Precedent**

41.     Plaintiff has failed to comply with one or more provisions of the Policy which serve as a condition precedent to recovery, including but not limited to failing to:

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.
(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.
(4) Take all reasonable steps to protect the Covered Property from future damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.
(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.
***
(8) Cooperate with us in the investigation or settlement of the claim.

42.     Further, the Policy expressly states:

**D. LEGAL ACTION AGAINST US**
No one may bring a legal action against us under this Coverage Part unless:
     1. There has been full compliance with all of the terms of this Coverage Part; and
     2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.
                              ***

43.     Accordingly, because Plaintiff has not met all conditions precedent to filing this lawsuit, Plaintiff is contractually precluded from bringing this lawsuit against Scottsdale.

### Third Defense
### <u>Lack of Coverage Precludes Extra-Contractual Liability</u>

44.    The existence of coverage for an insurance claim is necessary to establish the basis of claims for violations of the Texas Insurance Code and the common-law duty of good faith and fair dealing. Because Plaintiff's allegations are generally based upon Scottsdale's alleged failure to investigate the claim and pay policy benefits, the absence of coverage for the allegedly unpaid amounts of the underlying insurance claim precludes the extra-contractual claims against Scottsdale as a matter of law.

### Fourth Defense
### <u>*Bona Fide* Dispute</u>

45.    Under Texas law, an insured bringing an action against its insurer for an alleged breach of a duty of good faith and fair dealing, whether under the common law or as authorized by statute, must carry the burden of proof to establish that the insurer unreasonably denied or delayed payment of an insurance claim when the insurer's liability had become reasonably clear. At all times material to this lawsuit, Scottsdale's liability was not "reasonably clear." In other words, nothing more than a *bona fide* coverage dispute exists between the parties, which does not get Plaintiff over the threshold to extra-contractual damages in this case.

### Fifth Defense
### <u>Proportionate Responsibility</u>

46.    Plaintiff's damages, if any, are the result, in whole or in part, of Plaintiff's own fault, acts and/or omissions, negligence, breach of duty, violation of statute, and/or breach of contract or that of its agents, representatives, and/or employees.

**Sixth Defense**
**Tolling of Penalties**

47.    Plaintiff's live pleading seeks recovery of statutory penalties under Chapter 542 of the Texas Insurance Code, which regulates the prompt payment of claims. Scottsdale denies liability under this statute; however, if upon final hearing and trial, the fact finder determines that there have been violations of this statute, Scottsdale urges the Court to determine that all penalties during any delays attributable to Plaintiff or Plaintiff's attorneys should be tolled.

**Seventh Defense**
**Failure to Mitigate**

48.    Plaintiff's causes of action against Scottsdale are barred, in whole or in part, because Plaintiff failed to take reasonable action to mitigate damages. This includes, but is not limited to, Plaintiff's failure to properly maintain the property and failure to repair damages stemming from both the claim and weather event at issue in this lawsuit.

**Eighth Defense**
**Due Process and Equal Protection**

49.    To the extent Plaintiff seeks punitive or additional damages, Scottsdale invokes its right under the due process clause of the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment of the United States Constitution. Scottsdale affirmatively pleads that Plaintiff's pleading of punitive and/or exemplary damages violates the due process clauses of the Fifth and Fourteenth Amendments.

50.    To the extent Plaintiff prays for punitive or additional damages, Scottsdale asserts that such request should be denied because it violates the equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, the provisions of the Eighth Amendment to the United States Constitution, and the Constitution of the State of Texas, Article I, Sections 13 and 19.

**Ninth Defense**
**Punitive Damage Limitation**

51.     With respect to Plaintiff's claims for damages, any award of punitive damages must be limited to the greater of: (1) two times the amount of economic damages plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or (2) two times the amount of economic damages plus $200,000, pursuant to the statutory mandates of Texas Civil Practice & Remedies Code § 41.002–41.009.

**Tenth Defense**
**Deductible**

52.     To the extent any damage to the covered property is determined by the factfinder to be the result of a covered cause of loss and not otherwise excluded by the provisions of the policy, Plaintiff's recovery is subject to the applicable policy deductibles as shown in the Policy Declarations.

**Eleventh Defense**
**Limits of Liability**

53.     Any recovery by Plaintiff is subject to the policy limits of the applicable insurance policy.

**Twelfth Defense**
**Excessive Demand**

54.     Scottsdale asserts that Plaintiff is not entitled to attorneys' fees as it has asserted an excessive demand. Plaintiff has acted unreasonably and in bad faith by demanding monies to which it is not entitled under the Policy, thereby making the demand unreasonable and, consequently, excessive. More specifically, in Plaintiff's counsel's demand letter dated September 9, 2021, Plaintiff demanded $69,599.57 to be paid "within 14 days" otherwise suit would be filed for "all

amounts owed, including the amount of the claim, interest, attorneys' fees, and the additional damages provided by law."

**Thirteenth Defense**
**Offset/Credit for Prior Payments**

55.     Plaintiff's claims have been properly investigated and paid. In particular, Scottsdale issued the following claim payments:

- <u>April 2, 2021</u>:          **$50,000** (advance for building repairs)
- <u>April 20, 2021</u>:          **$98,966.38** (building repairs)
- <u>December 28, 2021</u>:     **$57,353.82** (building repairs)
- <u>December 28, 2021</u>:     **$20,990.65** (business income loss)

56.     Accordingly, Scottsdale is entitled to an offset for all prior payments totaling **$227,310.75**.

**Fourteenth Defense:**
**Loss Settlement Provisions**

57.     Scottsdale relies on the loss settlement provisions set forth in the relevant insurance policy limiting loss payments to actual cash value except as set forth in the Policy.

**Fifteenth Defense:**
**No Breach of Policy**

58.     Plaintiff's claim has been properly investigated, adjusted, and evaluated. There has been no breach of the Policy, thereby precluding recovery of damages pursuant to any contractual and extra-contractual theory of liability, including violation(s) of the Texas Insurance Code and the Texas Deceptive Trade Practices Act, and breach(es) of the common law duty of good faith and fair dealing.

## III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Scottsdale Insurance Company respectfully prays that Plaintiff take nothing, that Scottsdale be awarded its reasonable and necessary attorneys' fees and costs, and for such other and further relief to which Scottsdale may be justly entitled.

Respectfully submitted,

*/s/ Patrick M. Kemp*

Patrick M. Kemp
Texas Bar No. 24043751
pkemp@smsm.com
Robert G. Wall
Texas Bar No. 24072411
rwall@smsm.com
Segal McCambridge Singer & Mahoney
100 Congress Ave., Ste. 800
Austin, Texas 78701
(512) 476-7834
(512) 476-7832 – Facsimile

**ATTORNEYS FOR DEFENDANT
SCOTTDALE INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served electronically via CM/ECF this the 11th day of March, 2024 to:

Scott R. Kidd
Scott V. Kidd
Kidd Law Firm
819 West 11th Street
Austin, Texas 78701
scott@kiddlawaustin.com
svk@kiddlawaustin.com

*/s/ Patrick M. Kemp*

Patrick M. Kemp